[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14372
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-20331-JLK

H.S.,
minor, by and through her parents,
natural guardians and next friends,
R.S. and L.S.,

Plaintiff-Appellant,

versus

CARNIVAL CORPORATION,
a Panamanian corporation,

Defendant-Appellee,

MAX HARMON,
an Ohio resident,
JODEE C. EDWARDS,
an Ohio resident,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 12, 2018)

Before WILLIAM PRYOR, JULIE CARNES, and HULL, Circuit Judges.

PER CURIAM:

H.S. appeals the dismissal with prejudice of her amended complaint against Carnival Corporation. H.S. alleged that, while on board a Carnival cruise ship, she drank alcohol and was sexually assaulted in a male teenaged passenger's stateroom because Carnival earlier failed to curtail her "physical contact and sexual activity" with two teenaged boys in a youth nightclub on the ship. The district court ruled that H.S. failed to state claims of negligence, fraud in the inducement, and fraud by concealment. *See* Fed. R. Civ. P. 9, 12(b)(6). H.S. argues that Carnival should have foreseen from its failure to supervise the teenagers that their "activity would continue, possibly in different areas of the ship" and that the failure of Carnival to "detect[] [and curtail] the unruly sexual behavior" was the proximate cause of H.S.'s sexual assault. We affirm the dismissal of H.S.'s complaint.

H.S.'s complaint stemmed from an incident that occurred in late January 2015 while she was vacationing with her parents on the *Carnival Pride*. H.S., a 14-year-old girl, decided to participate in a youth program offered on the *Pride*.

2

Although the *Pride* had a program for adolescents between the ages of 12 and 14, H.S.'s mother registered H.S. for Club O2, which was a program Carnival "designed specifically for 15–17 year olds." The program allowed teenagers to "come and go as [they] please[d]" from a lounge containing couches, a dance floor, and gaming systems. Carnival advertised that the "lounge creates a safe and comfortable environment for our teen guests . . . [to participate in] activities teens enjoy doing with their peers," that there is "no smoking or alcohol allowed in the[] lounges," and that "[u]nruly behavior will not be permitted." And Carnival "reserve[d] the right to remove and exclude from any further participation . . . anyone demonstrating behavior, including but not limited to biting, fighting, hitting, throwing, kicking, foul language, [and] bringing or consuming alcohol & tobacco." Carnival stated that the program staff had "to meet important educational and professional requirements" and were "either college educated in education, child psychology or youth recreation—OR—[had] extensive professional experience with children, such as teaching, coaching or daycare."

H.S.'s complaint related to her alleged ongoing activity with two teenaged passengers, K.M.A. and E.H. According to H.S., "[o]n or before January 30, 2015," she "consumed [whisky] provided by E.H." During the evening of January 30, 2015, K.M.A. attempted to "remove H.S.'s clothing and . . . [to] digital[ly] penetrate" her inside Club O2, but she "resisted, stopped the sexual activity and

3

left the Club O2 premises." And during the evening of January 31, 2015, while H.S. was sharing a couch with the two boys inside Club O2, K.M.A. laid his head in H.S.'s lap, K.M.A. put his hands between H.S.'s legs, and E.H. put his arm around H.S. and tickled her. H.S. alleged that the boys were "emboldened" by "the failure of any adult supervisor or crewmember" to "discover[], prevent[] or stop" the sexual activities and then "coaxed, misled, and persuaded H.S." to go to E.H.'s stateroom, where H.S. drank alcohol and engaged in oral sex and sexual intercourse with E.H.

H.S. sued Carnival for negligence, fraud in the inducement, and fraudulent concealment. H.S. alleged that she was sexually assaulted because Carnival was negligent in failing to adequately train its security staff and crew members how "to supervise adolescents onboard and at Club O2," in failing "to warn parents . . . concerning the past history of sexual assault on board its vessels," in failing to observe or "to intervene to prevent or interrupt" the sexual contact between H.S., K.M.A, and E.H., and in failing "to inform H.S.'s parents of her involvement in sexual activity within Club O2." With respect to her claim of fraud in the inducement, H.S. alleged that the sexual assault was a "direct and proximate result of" misrepresentations by Carnival that "all onboard youth activities would be age appropriate and supervised by competent, professionally trained and/or experienced crewmembers . . ., that 'unruly behavior' would not be tolerated in

4

youth programming, and that . . . youth facilities and programs would be tobacco and alcohol free." As to her claim of fraudulent concealment, H.S. alleged that her sexual assault was proximately caused by Carnival "knowingly and deliberately conceal[ing] and fail[ing] to disclose to its passengers . . . the true risk and incidence of sexual assault or sexual misconduct aboard its vessels" and by representing in its "marketing campaigns," "on its website and in publicized testimony by [its] representatives to Congress," "through agents and trade organizations," and in "statements to the news media" that "the incidents of sexual assault or misconduct during cruises was low" or "uncommon" and the cruise line "had zero tolerance for such misconduct." Carnival filed a motion to dismiss.

The district court dismissed H.S.'s amended complaint. The district court ruled that H.S. failed to state a claim of negligence because she "allege[d] [no] facts plausibly showing the breach of duty [by Carnival] was the proximate cause of [her] injury, or that the criminal act by which [she] was harmed was foreseeable based upon what Carnival observed or should have observed." The district court also ruled that H.S. failed, as required to plead fraud in the inducement, "to allege an injury which [was] the consequence of reliance on the alleged misrepresentations" that Club O2 was "age appropriate, professionally supervised and safe," "alcohol-free," and would eject participants involved in "unruly behavior." And the district court ruled that H.S. provided no details about "the time

or place" when Carnival fraudulently concealed information about sexual assaults on its vessels and that H.S. "fail[ed] to respond to [the] argument [of Carnival] in favor of dismissal" as required in a local rule of the district court, *see* S.D. Fla. L.R. 7.1(c).

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (internal quotation marks and citation omitted). But we will not credit "unwarranted deductions of fact." *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1248 (11th Cir. 2005). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The district court did not err by dismissing H.S.'s claim of negligence. To state a claim of negligence, H.S. had to allege that Carnival breached a duty to supervise her and that the breach actually and proximately caused her injury. *See Chaparro*, 693 F.3d at 1336. Because the proximate cause of H.S.'s injury was an

6

intervening criminal act by "a fellow passenger," Carnival could not be liable in negligence unless the "injury by its nature could have been reasonably anticipated or naturally expected to occur or reasonably foreseen in time [for Carnival] to have prevented the injury." *See Bullock v. Tamiami Trail Tours, Inc.*, 266 F.2d 326, 331 (5th Cir. 1959) (internal quotation marks omitted). H.S. failed to allege how Carnival could have foreseen from the teenagers' conduct in Club O2 that H.S. would visit E.H.'s stateroom, become intoxicated, and be sexually assaulted. H.S.'s allegations established instead that Carnival was obligated to supervise her inside Club O2.

H.S. argues that her "allegations regarding foreseeability are far more detailed and specific" than those provided in the complaint of negligence that survived the motion to dismiss in *Chaparro*, but we disagree. In *Chaparro*, the parents of a Carnival passenger sued after their daughter was fatally shot while following the recommendation of a Carnival employee to visit Coki Beach on the island of St. Thomas. 693 F.3d at 1335. We concluded that the parents' allegation "that Carnival was aware of gang-related violence and crime, including public shootings, in St. Thomas generally and near Coki Beach specifically" established that their daughter's injury was reasonably foreseeable to Carnival and created a basis for imposing on the carrier a duty to warn of the risk of danger. *Id.* at 1336. In contrast, H.S. alleged no facts to support a plausible inference that Carnival was

7

aware of teenage boys sexually assaulting teenage girls on its vessels or, more specifically, that teenage girls were leaving the youth nightclub, visiting peers' staterooms unchaperoned, and being sexually abused. As the district court reasoned, "It is a leap too far to infer that Carnival's failure to supervise and prevent minors from engaging in consensual touching and sexual activity in a public area of the ship . . . [made] a subsequent sexual assault in a private area of the ship . . . foreseeable based on what Carnival should have observed."

The district court also did not err by dismissing H.S.'s claim of fraud in the inducement. H.S. alleged no facts that would allow a plausible inference that she was injured as a result of relying on the representations of Carnival that Club O2 was supervised and safe. *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1176 (11th Cir. 1994). H.S. alleged that she suffered harm after she left Club 02.

H.S. has abandoned any challenge that she could have made to the dismissal of her claim of fraudulent concealment. "[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). H.S. does not dispute that she failed to satisfy the particularity requirement to plead her claim of fraud. *See* Fed. R. Civ. P. 9(b). We deem abandoned any argument that H.S. could have made contesting the dismissal of this claim.

8

We **AFFIRM** the dismissal with prejudice of H.S.'s complaint.

9